# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 15-612V
(not to be published)

* * * * * * * * * * * * * * * * * * * * * * * *
ALAYNA MCDONALD,                          *
                                          *    Chief Special Master Corcoran
             Petitioner,                  *
                                          *    Filed: September 12, 2023
v.                                        *
                                          *
                                          *
                                          *
SECRETARY OF HEALTH AND                   *
HUMAN SERVICES,                           *
                                          *
             Respondent.                  *
                                          *
* * * * * * * * * * * * * * * * * * * * * * * *

*Phyllis Widman*, Widman Law Firm, LLC, Linwood, NJ, for Petitioner.

*Mallori Openchowski*, U.S. Dep't of Justice, Washington, DC, for Respondent.

### DECISION GRANTING IN PART ATTORNEY'S FEES AND COSTS[1]

On June 16, 2015, Craig and Mary Beth McDonald, on behalf of their then-minor daughter, Alayna, filed a petition seeking compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program").[2] They alleged that Ms. McDonald suffered from mitochondrial and methylation/glutathione dysfunction causing or exacerbating chronic fatigue after receipt of two human papillomavirus vaccines on August 17, 2012, and December 3, 2012. Petition (ECF No. 1) at 1. The caption was later amended to make Ms. McDonald the

---

[1] The parties may object to the published Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen (14) days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the entire Decision will be available to the public in its current form. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

Petitioner, after she turned 18. ECF No. at 71.

The claim was litigated for several years, and at the conclusion of the parties' filing of numerous expert reports, I determined the matter was ready for resolution via ruling on the record, and the parties briefed their positions. ECF Nos. 135, 141, 144. I subsequently issued a decision denying entitlement. *McDonald v. Sec'y of Health & Hum. Servs.*, No. 15-612V, 2023 WL 2387844 (Fed. Cl. Spec. Mstr. Mar. 7, 2023) (also available at ECF No. 145) (the "Decision"). Petitioner did not opt to appeal my determination.

Ms. McDonald previously sought an interim award of fees in this matter for work performed through the time of prior counsel's withdrawal from the case in 2020, but I deferred resolution of the motion. ECF No. 138 ("Interim Fees Decision").[3] Petitioner had requested $107,057.12 (although the requested components actually added up to $107,056.52). Interim Fees Decision at 2, n.3. This reflected $66,707.10 in fees, plus $39,872.83 in costs, based on work performed by Petitioner's prior attorneys and a paralegal from April 24, 2015, to February 5, 2020. ECF No. 105 at 1, 13–44. Petitioner also requested reimbursement of costs she personally incurred in the amount of $476.59. *Id.*

Petitioner has now filed a motion for a final award of attorney's fees and costs. Motion, dated June 22, 2023 (ECF No. 149) ("Final Fees Mot."). Petitioner requests an additional $58,361.25 ($38,661.25 in fees, plus $19,700.00 in costs), based solely on work performed on the matter by Ms. Phyllis Widman, who had appeared for Petitioner in April 2020. ECF No. 149 at 3. This "final" fees request thus only covers fees incurred for the assistance of present counsel, and although it does not reference the pending interim request, it also does not abandon or disclaim it.

Respondent reacted to the final fees request on July 6, 2023. Response, dated July 6, 2023 (ECF No. 150) ("Response"). Respondent is satisfied that the statutory requirements for an attorney's fees and costs award are met in this case, but defers the calculation of the amount to be awarded to my discretion. *Id.* at 2–3. However, Respondent also notes that Petitioner did not address the reasonable basis for pursuing her claim, and discusses the importance of evaluating reasonableness of the requested costs. *Id.* at 2, n.2–3. No reply was filed.

For the reasons set forth below, I hereby **GRANT IN PART** Petitioner's two fees motions, awarding fees and costs in the total amount of **$125,753.68.**

---

[3] The matter was presided over by another special master until the claim's transfer to me in March 2021 (ECF No. 20). The interim fees request had been made prior to transfer, and was still pending at the time of transfer.

2

## ANALYSIS

**I.      Petitioner's Claim had Reasonable Basis**

Although the Vaccine Act only guarantees a reasonable award of attorney's fees and costs to successful petitioners, a special master may also award fees and costs in an unsuccessful case if: (1) the "petition was brought in good faith"; and (2) "there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). I have in prior decisions set forth at length the criteria to be applied when determining if a claim possessed "reasonable basis" sufficient for a fees award. *See, e.g.*, *Sterling v. Sec'y of Health & Hum. Servs.*, No. 16-551V, 2020 WL 549443, at *4 (Fed. Cl. Spec. Mstr. Jan. 3, 2020). Importantly, establishing reasonable basis does not *automatically* entitle an unsuccessful claimant to fees, but is instead a threshold obligation; fees can still thereafter be limited, if unreasonable, or even denied entirely.

A claim's reasonable basis[4] must be demonstrated through some objective evidentiary showing. *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) (citing *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017)). This objective inquiry is focused on the *claim*—counsel's conduct is irrelevant (although it may bulwark good faith). *Simmons*, 875 F.3d at 635. Reasonable basis inquiries are not static—they evaluate not only what was known at the time the petition was filed, but also take into account what is learned about the evidentiary support for the claim as the matter progresses. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994) (upholding the finding that a reasonable basis for petitioners' claims ceased to exist once they had reviewed their expert's opinion, which consisted entirely of unsupported speculation).

The standard for reasonable basis is lesser (and thus inherently easier to satisfy) than the preponderant standard applied when assessing entitlement, as cases that fail can still have sufficient objective grounding for a fees award. *Braun v. Sec'y of Health & Hum. Servs.*, 144 Fed. Cl. 72, 77 (2019). The Court of Federal Claims has affirmed that "[r]easonable basis is a standard that petitioners, at least generally, meet by submitting evidence." *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 287 (Fed. Cl. 2014) (internal quotations omitted) (affirming special master). The factual basis and medical support for the claim is among the evidence that should be considered. *Carter v. Sec'y of Health & Hum. Servs.*, 132 Fed. Cl. 372, 378 (Fed. Cl. 2017). Under the Vaccine Act, special masters have "maximum discretion" in applying the reasonable basis standard. *See, e.g.*, *Silva v. Sec'y of Health & Hum. Servs.*, 108 Fed. Cl. 401, 401–02 (Fed. Cl.

---

[4] Because this claim's good faith is not in dispute, I do not include a discussion of the standards applicable to that fees prong.

2012).⁵

Petitioner's claim was ultimately unsuccessful, as neither causation theory advanced (that unidentified silicone-based components of the vaccine, or its adjuvants, can cause chronic fatigue and associated symptoms) was established with sufficient reliable scientific or medical proof. In fact, I found that this matter underscored the difference between a "plausible" theory (here, barely so) and one that has reliable scientific/medical support—and more importantly, why the *latter* is the proper standard for evaluating whether a claimant has met her *Althen* prong one burden. *See* Decision at *24. Though I found this to be an exceedingly weak case, I have not heard such a theory before, and therefore am reluctant to penalize counsel for taking a risk on this case (although in subsequent matters proposing the same theory, I would anticipate being far less lenient). There was also some objective support for the claim, since the record demonstrates that Petitioner did experience post-vaccination fatigue (despite my determination that no cognizable *injury* related to vaccination was established).

Thus, in light of the extremely lenient standard that governs reasonable basis determinations, a final award of fees and costs in this matter is permissible. And because I find no reason otherwise to deny a fees award, I will allow one herein. (I do, however, take into account the thin and unpersuasive quality of the theory in my determination of how much to award for expert input, as discussed below).

## II.     Calculation of Fees

Determining the appropriate amount of the fees award is a two-part process. The first part involves application of the lodestar method—"multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1347–48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down to take relevant factors into consideration. *Id.* at 1348. This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute. *Hensley v. Eckerhart*, 461 U.S. 424, 429–37 (1983).

An attorney's reasonable hourly rate is determined by the "forum rule," which bases the proper hourly rate to be awarded on the forum in which the relevant court sits (Washington, D.C., for Vaccine Act cases), *except* where an attorney's work was not performed in the forum and there is a substantial difference in rates (the so-called "*Davis* exception"). *Avera*, 515 F.3d at 1348 (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot.*

---

⁵ *See also Chuisano*, 116 Fed. Cl. at 285 (cautioning against rigid rules or criteria for reasonable basis because they would subvert the discretion of special masters and stating that an amorphous definition of reasonable basis is consistent with the Vaccine Act as a whole).

*Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)). A 2015 decision established the hourly rate ranges for attorneys with different levels of experience who are entitled to the forum rate in the Vaccine Program. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

Petitioner requests the following rates for attorneys and support staff involved in this matter, based on the years of work was performed:

| **Attorney** | **2015** | **2016** | **2017** | **2018** | **2019** | **2020** | **2021** | **2022** | **2023** |
|---|---|---|---|---|---|---|---|---|---|
| **Mr. Clifford Shoemaker**[6] | $415 | $430 | $440 | $450 | $460 | - | - | - | - |
| **Ms. Renee Gentry** | $400 | - | $424 | $435 | $440 | $464 | - | - | - |
| **Paralegal from the Law Offices of Renee Gentry** | $150 | $150 | $150 | $150 | $150 | - | - | - | - |
| **Ms. Phyllis Widman** | - | - | - | - | - | $375 | $375 | $400 | $420 |

ECF No. 105 at 13–44; ECF No. 149 at 1–12.

I shall begin with Petitioner's previous counsel, who withdrew in 2020. The jurisdictions in question where their work was performed—Vienna, Virginia, and Washington, D.C.—have both been deemed "in forum." Accordingly, those initial lawyers should be paid rates established in *McCulloch. See Thompson v. Sec'y of Health & Hum. Servs.*, No. 15-671V, 2022 WL 1075391, at *4 (Fed. Cl. Spec. Mstr. Feb. 22, 2022). The requested rates (and their paralegal) are consistent with what has previously been awarded, in accordance with the Office of Special Masters' fee schedule.[7] *A.Y. by J.Y. v. Sec'y of Health & Hum. Servs.*, No. 17-850V, 2021 WL 3660748, at *4

---

[6] Although Mr. Shoemaker has retired from the practice of law, the work he performed on this matter occurred prior to that time.

[7] OSM Attorneys' Forum Hourly Rate Fee Schedules, https://www.uscfc.uscourts.gov/node/2914 (last visited September 11, 2023).

(Fed. Cl. Spec. Mstr. July 9, 2021). I also deem the time devoted to this matter reasonable, as well as the magnitude of fees incurred; the claim was allowed to proceed for nearly five years before prior counsel's withdrawal, and even then the total amount billed to the matter did not exceed $70,000.00.

Petitioner's current counsel, Ms. Widman, practices in Northfield, New Jersey—a jurisdiction that has also been deemed "in forum." Accordingly, she is similarly entitled to the rates established in *McCulloch*. *See Maxwell v. Sec'y of Health & Hum. Servs.*, No. 16-827V, 2018 WL 5095119, at *2 (Fed. Cl. Spec. Mstr. Sept. 17, 2018). The specific rates requested for Ms. Widman's time are also consistent with what she has received in prior Program cases, in accordance with the Office of Special Masters' fee schedule.[8] *Walters v. Sec'y of Health & Hum. Servs.*, No. 15-1380V, 2022 WL 1077311, at *5 (Fed. Cl. Spec. Mstr. Feb. 23, 2022). And I deem the time devoted to this matter reasonable, despite the unfavorable outcome.

### III.     Calculation of Attorney's Costs

Just as they are required to establish the reasonableness of requested fees, petitioners must also demonstrate that requested litigation costs are reasonable. *Presault v. United States*, 52 Fed. Cl. 667, 670 (2002); *Perreira v. Sec'y of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (1992). Reasonable costs include expenses associated with obtaining medical records, as well as expert time incurred while working on a case. *Fester v. Sec'y of Health & Hum. Servs.*, No.10-243V, 2013 WL 5367670, at *16 (Fed. Cl. Spec. Mstr. Aug. 27, 2013). When petitioners fail to substantiate a cost item, such as by not providing appropriate documentation to explain the basis for a particular cost, special masters have refrained from paying the cost at issue. *See, e.g.*, *Gardner-Cook v. Sec'y of Health & Hum. Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005).

*Interim Costs*

The interim fee request seeks between $39,872,83 and $40.414.96, making it difficult to ascertain what is the precise "number" for costs that Petitioner actually incurred.[9] After an unnecessarily long amount of time was spent deciphering the receipts, it appears that the correct

---

[8] OSM Attorneys' Forum Hourly Rate Fee Schedules, https://www.uscfc.uscourts.gov/node/2914 (last visited September 11, 2023).

[9] Petitioner's opening page requests a total for medical experts, Petitioner's out of pocket expenses, and additional litigation expenses at $40,349.42. ECF No. 105 at 1. However, in the substance of the request, Petitioner has a page titled "expenses incurred," which has a different total of $40,414.96. *Id.* at 46. Then on the following page, Petitioner has an "INTERIM list of Shoemaker, Gentry & Knickelbein Expenses," which adds to a differing total of $39,872,83. *Id.* at 47.

6

total is $39,872.83 in outstanding costs,[10] including general litigation expenses, Petitioner's out-of-pocket expenses, and the costs associated with the work of two experts: Dr. Arthur Brawer, M.D., and Judy Mikovits, PhD. ECF No. 105 at 47. All of these costs were reasonably incurred—save some of the expert costs.

Dr. Mikovits authored two expert reports that were later voluntarily withdrawn (in connection with other expert reports then-filed) after Petitioner's decision to proceed based solely on the opinions offered by Dr. Brawer. Decision at *3. Petitioner's interim request, however, sought reimbursement of Dr. Mikovits's time, submitting an invoice for a total of $24,850.00 (at an hourly rate of $350.00 for 71 hours of work). ECF No. 105 at 65–66. In my Decision, I noted that Petitioner was wise to have abandoned these expert reports—and Dr. Mikovits's opinion in particular, as I have observed (in other cases) that she does not offer reliable expert opinions, and therefore should not be retained in Program cases. Decision at *3 n.4; *McKown v. Sec'y of Health & Hum. Servs.*, No. 15-1451V, 2019 WL 7604714, at *4–5 (Fed. Cl. Spec. Mstr. Dec. 18, 2019) (fees award cutting Dr. Mikovits's fee by 60 percent and indicating my intent not to entertain opinions from her in future matters).[11] Accordingly, because Dr. Mikovits's opinion was not ultimately relied upon in this matter, did not assist the claim's resolution, and because of my substantiated misgivings about the quality of her reports or their general utility, this sum will be disallowed in its entirety.

Dr. Brawer authored two expert reports by the time the interim fees request was filed (ECF Nos. 81-2, 93-2), and submitted an invoice for $14,750.00, with $2,750.00 for a retainer fee and $12,000 for a "hearing appearance." The request specifically states that Dr. Brawer "allotted the dates of May 7, 2019 and May 8, 2019 for testimony . . . [p]lease forward your remittance of $12,000, as I have already moved patients and closed my office to accommodate this matter." ECF No. 105 at 49. Of course, there was *no* hearing in 2020, and I am not obliged to pay Dr. Brawer an arbitrary amount (effectively $6,000 per day of a hearing) for the *lack* of a hearing appearance. *See* ECF No. 86 (cancelling the two-day hearing). In fact, the docket reveals the hearing was cancelled as a result of a late-filed (at the time) report submitted by Dr. Brawer, which was deemed to open a new opinion question that Respondent was then not prepared to address in time for the previously-scheduled hearing. *Id.* at 1. Petitioner has otherwise offered no defense to this costs component request.

---

[10] After time reviewing each of the receipts, one key receipt that was missing with $586.60 of photocopies, and because this amount was unsubstantiated it will not be awarded. ECF No. 105 at 46. As set forth in the Second Supplement to the Vaccine Rules, attorney's costs must include an itemized list of all costs *and* "supporting documentation for each cost in the form of invoices, receipts, account statements, or any other document petitioner reasonable believes will substantiate the requested costs." Vaccine Rules, Second Supplement to Appendix B, 3(b).

[11] I note that *McKown* was issued *before* the interim fees request was filed, putting counsel on notice of my reasonable objections to Dr. Mikovits as a Program expert.

I understand that Dr. Brawer probably spent *some* time on these expert reports (despite his poorly articulated theory, as discussed below), which is at least equal to his retainer, so I shall pay the amount of his retainer - *but nothing more* with respect to the interim request, as he did not substantiate any further work performed to that time, and is not entitled to a "cancellation fee" for the rescheduled hearing date. Thus, Petitioner shall receive $2,750.00 for Dr. Brawer's time through the spring of 2020.

All other requested costs in this interim request appear reasonable, including the amount paid out of pocket by Petitioner for her filing fee and postage (ECF No. 105 at 4), and they shall also be awarded in full without reduction.

*Final Costs Request*

In her final fees request, Petitioner seeks $19,700.00 in outstanding costs, comprising only the expenses associated with two experts, Dr. Brawer and Ernest Chiodo, M.D. ECF No. 149 at 3. Dr. Brawer authored two more reports by the time of this final fee request (ECF Nos. 110-1, 110-2), and submitted a final invoice for $1,800.00, but appears to randomly devote an equal total amount of time and consideration for responding to two supplemental reports from Respondent's two experts (each for $900), with no discussion on the time spent or hourly rate. ECF No, 149 at 14. I will award only part of this time. The theory he offered was poorly articulated and highly unpersuasive, and I will not entertain it in future cases. The only reason I have decided to award *any* amount is out of concern for fairness to the Petitioner. Accordingly, Petitioner will receive only $1000.00 for this additional work performed by Arthur Brawer – a reasonable penalty for poor expert work directed at what proved to be a completely untenable theory.

Dr. Chiodo authored one expert report (ECF No. 124-1), and submitted an invoice for a total of $17,900.00 (at what he claims is an hourly rate of $500.00 for 38.5 hours of work—although, this total actually adds up to $19,250.00). I noted in my Decision that Dr. Chiodo's seven-page report was substantively speaking "fairly thin," and cited very little in the way of medical literature to support his assertions. *See McDonald*, 2023 WL 2387844, at *9. Thus, the hours expended on this report are wholly unreasonable for the work performed. I am therefore going to reduce Dr. Chiodo's costs by fifteen percent, as part of the exercise of my discretion in determining reasonable costs, and award $16,362.50.[12]

In summary, Petitioner's awarded costs total $20,385.33—$3,022.83 for the interim request and $17,362.50 for what was sought in the final request.

---

[12] $19,250.00 multiplied by 0.15 equals $2,887.50. Thus, $19,250.00 minus $2,887.50 equals $16,362.50.

## CONCLUSION

Based on the foregoing, and in the exercise of the discretion afforded to me in determining the propriety of a final fees award, I hereby **GRANT IN PART** Petitioner's fees motion, awarding fees and costs in the total amount of **$125,753.68** ($105,368.35 in attorney's fees,[13] $20,385.33 in costs,[14] and $476.59 in individual costs) to Petitioner, in the form of two checks: one in the amount of $144,351.18 made payable jointly to Petitioner and her attorney, Ms. Phyllis Widman (from which Ms. Widman shall pay $69,729.93 to Ms. Gentry for the fees and costs awarded in response to the pending interim request); and the second in the amount of $476.59 to Petitioner herself.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** in accordance with the terms of this Decision.[15]

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[13] The fees include $66,707.10 to Ms. Gentry and $38,661.25 to Ms. Widman.

[14] The costs (not including Petitioner's out of pocket expenses) include $3,022.83 to Ms. Gentry and $17,362.50 to Ms. Widman.

[15] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.